UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA HINES,<br><br>   Plaintiff,<br><br>  v.<br><br>CALIFORNIA PUBLIC UTILITIES COMMISSION, *et al.*,<br><br>   Defendants.<br>_____/ | No. C-10-2813 EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND STRIKE**<br><br>**(Docket No. 9)** |

   Plaintiff Donna Hines has filed suit against Defendants the California Public Utilities Commission ("CPUC") and Dana S. Appling, for, *inter alia*, retaliation. The CPUC was Ms. Hines's employer during the relevant period and continues to be her employer today. Ms. Appling, now deceased, was a director within a division of the CPUC during the relevant period. Currently pending before the Court is the CPUC's motion to dismiss and strike. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and all other evidence of record, the Court hereby **GRANTS** the CPUC's motion.

///
///
///
///
///
///

## I. FACTUAL & PROCEDURAL BACKGROUND

In her complaint, Ms. Hines alleges as follows.[1]  The CPUC is a state agency.  *See* Compl. ¶ 18.  Since 2002, Ms. Hines has worked for the CPUC.  *See id.* ¶ 19.  Currently, she works as an analyst in a CPUC department known as the Division of Ratepayer Advocates ("DRA").  The DRA is responsible for advocacy on behalf of California ratepayers.  *See id.* ¶¶ 19, 32.

In August 2007, Ms. Hines filed suit against the CPUC, alleging race discrimination and retaliation in violation of Title VII.  *See id.* ¶ 34; *see also Hines v. CPUC*, No. C-07-4145 CW.  Some two years later, between July and December 2009, the CPUC took several adverse employment actions against Ms. Hines.  First, on July 27, 2009, the CPUC issued a Corrective Action Memorandum.  *See* Compl. ¶ 39 & Ex. C.  Second, on September 8, 2009, the CPUC issued a Notice of Adverse Action.  *See id.* ¶ 51 & Ex. E.  Finally, on December 3, 2009, the CPUC issued a second Notice of Adverse Action, which resulted in a week of suspension without pay.  *See id.* ¶ 55 & Ex. F.

According to Ms. Hines, the CPUC's actions described above constituted retaliation for her having filed the Title VII suit back in August 2007.  Ms. Hines also argues that the above actions constituted retaliation for her refusing to endorse certain DRA reports.  *See id.* ¶¶ 82, 83, 85, 89.  Apparently, when a DRA report is prepared, the name of the analyst who worked on the matter is included on the report, and the analyst is expected to endorse the report and testify as to the report's contents before the CPUC.  At the hearing, Ms. Hines indicated that she refused to endorse the

---

[1] The Court notes that Ms. Hines filed an amended complaint on July 29, 2010.  *See* Docket No. 5 (amended complaint).  Because the CPUC asserts that it was never served with the amended complaint, *see* Mot. at 2 n.1, and because there is no indication in the record that such service did in fact take place, the Court looks to the original complaint, and not the amended complaint, in evaluating the motion to dismiss and strike.  However, as a practical matter, the original complaint and the amended complaint are largely the same.

The Court further notes that, as part of her opposition to the CPUC's motion, Ms. Hines has filed a request for judicial notice.  The Court denies the request as moot because the evidence submitted by Ms. Hines is largely immaterial to the issues presented in the motion to dismiss and strike.  Moreover, the evidence submitted by Ms. Hines is, as a general matter, material not appropriate for judicial notice.  *See* Fed. R. Evid. 201 (providing that a court make take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

reports because she did not agree with their recommendations -- *i.e.*, they were biased in favor of the public utilities that the CPUC was supposed to be regulating.  Ms. Hines's complaint indicates that the CPUC was biased in favor of the public utilities because, *e.g.*, officials at the CPUC were former employees of the regulated utilities.  *See id.* ¶¶ 66-67.

Based on the above allegations, Ms. Hines has filed suit against both the CPUC and Ms. Appling, the former director of the DRA (now deceased), in her individual capacity.  In this order, the Court does not address any of the claims asserted against Ms. Appling because the claims have been asserted against her in her individual capacity only, and therefore the CPUC has no standing to make a motion to dismiss or strike with respect to any of those claims.  With respect to the claims asserted against the CPUC, they are as follows: retaliation pursuant to Title VII; violation of the Clayton and Sherman Acts; violation of the Sarbanes-Oxley Act; violation of the federal securities laws; and fraud (pursuant to federal law).  Each of these claims has been challenged by the CPUC.  The CPUC also argues that any claim for punitive damages must be stricken.

## II.   DISCUSSION

A.   Legal Standard

1.   Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

### 2. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks omitted), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). As indicated by the language of the rule, "'[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]'" *Id.* When ruling on a motion to strike, a court views the pleading under attack in the light most favorable to the nonmoving party. *See RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005). Courts generally disfavor motions to strike because striking is such a drastic remedy. *See Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (stating that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that 'motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted'").

## B. Eleventh Amendment Immunity

With respect to each of the claims asserted against the CPUC -- except the claim under Title VII -- the CPUC argues in favor of dismissal based on Eleventh Amendment immunity.

The Eleventh Amendment provides as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend XI. As interpreted, the Eleventh Amendment bars suits in federal court against a state government by that state's citizens, by citizens of another state, or by citizens of a foreign state. *See Montana v. Goldin*, 394 F.3d 1189, 1195 (9th Cir. 2005) (noting that, absent waiver, states and state agencies are immune under the Eleventh Amendment from private actions for damages or injunctive relief in federal court). Eleventh Amendment immunity extends to agencies of the state

government and "arms of the state." *See Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429-30 (1997) (discussing whether a state instrumentality is "an arm of the State" for Eleventh Amendment immunity purposes); *Goldin*, 394 F.3d at 1195 (stating that, under the Eleventh Amendment, "'agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court'").

The Ninth Circuit has held that the CPUC is a state agency entitled to categorical Eleventh Amendment protection. *See Air Transp. Ass'n of Am. v. CPUC*, 833 F.2d 200, 203 (9th Cir. 1987) (stating that the "CPUC correctly contends that we must hold that the eleventh amendment prohibits the district court from exercising jurisdiction over [the plaintiff's] claim that the Commission acted in excess of its state statutory jurisdiction"); *see also Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (holding that the CPUC is an arm of the state and, as such, cannot be a section 1983 defendant, although not reaching the issue of sovereign immunity). Therefore, the CPUC is correct in asserting that it is entitled to Eleventh Amendment immunity.[2]

In her papers, Ms. Hines argues that the CPUC cannot rely on Eleventh Amendment immunity because that immunity has been abrogated by Congress or has been waived by the state. The Court does not agree.

First, although Eleventh Amendment immunity has been abrogated by Congress for claims pursuant to Title VII, *see Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 976 (9th Cir. 1994) (stating that "[t]he Supreme Court has held that Congress has abrogated the Eleventh Amendment with respect to Title VII claims"), the CPUC is not asserting such immunity with respect to Ms. Hines's Title VII claim. To the extent Ms. Hines argues abrogation for the non-Title VII claims asserted against the CPUC, her position is without merit. Congress's power to abrogate Eleventh Amendment immunity appears to have been severely circumscribed. As Judge Patel of this District has noted, the Supreme Court in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44

---

[2] The Court notes that, when state officers or employees are sued in their official capacities (instead of their individual capacities) for damages, those persons are also entitled to Eleventh Amendment immunity. *See Krainski v. Nevada ex rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010) (noting that Eleventh Amendment immunity shields state officials from official capacity suits for damages).

(1996), held that "Congress has the power to abrogate Eleventh Amendment immunity when it acts pursuant to the Fourteenth Amendment, but then appeared to confine Congressional authority to abrogate state sovereign immunity to those instances alone by overruling [an earlier case], which it characterized as a lone exception in allowing Eleventh Amendment abrogation pursuant to the Interstate Commerce Clause." *Clemes v. Del Norte County United Sch. Dist.*, No. C-93-1912 MHP, 1996 U.S. Dist. LEXIS 21883, at *14 n.4 (N.D. Cal. May 28, 1996). Hence, the one area in which Congress can abrogate Eleventh Amendment immunity of the states is when it acts pursuant to its powers under section 5 of the Fourteenth Amendment. *See Holley v. California Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (noting that Congress may abrogate state sovereign immunity under its power to enforce the Fourteenth Amendment ). In the instant case, none of the statutes referenced by Ms. Hines (*e.g.*, the Sherman Act, the Clayton Act, the Sarbanes-Oxley Act) were passed pursuant to Congress's powers under section 5 of the Fourteenth Amendment. Ms. Hines cites no other bases for finding an abrogation of the Eleventh Amendment under these statutes.[3] Therefore, the Eleventh Amendment is a bar to these non-Title VII claims.

Second, while the state itself may waive Eleventh Amendment immunity, such "immunity cannot be constructively waived." *Hibbs v. HDM Dep't of Human Res.*, 273 F.3d 844, 851 (9th Cir. 2001). Rather, the waiver must be "stated by the most express language or by such overwhelming implications from the text [of a statute] as will leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974), *overruled on other grounds by Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (internal quotation marks and original alterations omitted). Thus, even a general waiver of sovereign immunity is not enough to constitute waiver of Eleventh Amendment immunity; the text of the particular statute at issue must "specify the State's intention to subject itself to suit in *federal court*." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (emphasis in original); *see also Kennecott Copper Corp. v. State Tax Comm.*, 327 U.S. 573, 578-80

---

[3] To the extent Ms. Hines suggests that Congress abrogated Eleventh Amendment immunity in the Sarbanes-Oxley Act because the Act has extraterritoriality provisions, the Court does not agree. The extraterritorial application of a statute is an entirely different matter from and does not imply immunity from suit under the Eleventh Amendment. Thus, even if Congress had the power, no abrogation can be inferred.

1 (1946) (holding a state statute authorizing the state to be sued "in any court of competent
2 jurisdiction" to be an inadequate waiver of the Eleventh Amendment). In the instant case, Ms. Hines
3 has not demonstrated that this rigorous standard has been met.

4 For example, Ms. Hines claims that there has been a waiver of Eleventh Amendment
5 immunity in the California Public Utilities Code § 202.[4] But Ms. Hines does not make any claim
6 pursuant to § 202 or any other provision of the Public Utilities Code, and therefore the statute is
7 irrelevant. *See Kennecott*, 327 U.S. at 578-80 (analyzing waiver of sovereign immunity under the
8 particular law providing the plaintiff's cause of action). Even if a claim had been asserted under the
9 statute, the text of the statute says nothing about Eleventh Amendment immunity or the filing of
10 suits in federal court. The mere reference to interstate commerce is insufficient to constitute an
11 explicit waiver of Eleventh Amendment immunity.

12 Ms. Hines also makes various arguments that there has been a waiver because, *e.g.*, the
13 CPUC has accepted federal funds, entered a federally regulated aream or engaged in interstate
14 commerce. The Supreme Court has rejected similar arguments, holding that "the mere fact that a
15 State participates in a program through which the Federal Government provides assistance . . . is not
16 sufficient to establish consent on the part of the State to be sued in the federal courts." *Edelman*,
17 415 U.S. at 673. Moreover, Ms. Hines's theories are all theories of constructive waiver, which, as
18 noted above, are insufficient to constitute a waiver of Eleventh Amendment immunity.

---

[4] Section 202 provides:
> Neither this part nor any provision thereof, except when specifically so stated, shall apply to commerce with foreign nations or to interstate commerce, except insofar as such application is permitted under the Constitution and laws of the United States; but with reference to passenger stage corporations operating in interstate commerce between any point within this State and any point in any other state or in any foreign nation, the commission may prescribe such reasonable, uniform and nondiscriminatory rules in the interest and aid of public health, security, convenience, and general welfare as, in its opinion, are required by public convenience and necessity.

Cal. Pub. Util. Code § 202.

7

Accordingly, the Court concludes that there is Eleventh Amendment immunity for all non-Title VII claims, and thus non-Title VII claims against the CPUC are dismissed with prejudice.[5]

C.  Claims Pursuant to the Clayton and Sherman Acts

Even if Eleventh Amendment immunity were not a bar to Ms. Hines's non-Title VII claims, there are independent reasons why each of the non-Title VII claims should be dismissed with prejudice. The Court shall discuss each of these claims briefly, beginning with the claims brought pursuant to the Clayton and Sherman Acts.

The Clayton and Sherman Acts are antitrust statutes concerned with unfair competition. These claims asserted against the CPUC are without merit, because Ms. Hines has failed to cite any case law holding that a regulatory agency such as the CPUC (as opposed to a competitor or customer in the market), may be sued under either Act. Moreover, even if the CPUC could be sued, it is not clear, based on the allegations in the complaint, how either Act has been violated by the CPUC. The allegations do not establish a plausible legal claim against the CPUC under the standards set forth in *Iqbal* and *Twombly*.

D.  Claims Pursuant to Sarbanes-Oxley Act

Ms. Hines characterizes her Sarbanes-Oxley Act as a whistleblower claim, citing §§ 806 and 1107 in support. But Ms. Hines has failed to state a substantive claim for relief under either statute.[6]

With respect to § 806, the statute does provide for whistleblower protection but only for "employees of publicly traded companies." 18 U.S.C. § 1514A(a) (barring retaliation by companies "with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l), or that is required to file reports under section 15(d) of the Securities Exchange Act of

---

[5] The Court notes that, although Ms. Hines has asserted claims pursuant to 42 U.S.C. § 1983 against Ms. Appling in her individual capacity, she has not asserted any § 1983 claims against the CPUC. However, if Ms. Hines were to sue the CPUC under § 1983, she would encounter an Eleventh Amendment immunity problem once again. *See Brown v. California Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009) (noting that "'[t]he State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity'").

[6] In her complaint, Ms. Hines also cites to another provision of the Sarbanes-Oxley Act. *See* 18 U.S.C. § 1514. This statute is clearly inapplicable as it deals with temporary restraining orders related to harassment of a victim or witness in a federal criminal case.

1934 (15 U.S.C. § 78o(d))"). Although the CPUC appears to regulate publicly traded companies, it itself is not such a company. Section 806, therefore, is inapplicable.

As for § 1107, Ms. Hines's whistleblower claim appears to be predicated on subsection (e) of the statute which provides as follows:

> Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

*Id.* § 1513(e). Ms. Hines's claim predicated on § 1107 fails to state a claim for two reasons.

First, as reflected by the language above, § 1107 is a criminal statute, and no court has expressly found that a private right of action may brought under the statute. In fact, courts have typically found otherwise. *See, e.g.*, *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 456 F. Supp. 2d 131, 145 (D. Me. 2006) (concluding that § 1513(e) does not give rise to a private right of action because "[i]t prescribes fines or imprisonment of up to ten years as punishment" and "[p]rivate citizens 'lack a judicially cognizable interest in the prosecution or nonprosecution of another'"); *Ervin v. Nashville Peace & Justice Ctr.*, No. 3:07-0832, 2008 WL 4449920, at *7 (M.D. Tenn. Sept. 29, 2008) (stating that "[s]ection 1107 does *not* create a private civil cause of action"). In *Vierria v. California Highway Patrol,* 644 F. Supp. 2d 1219 (E.D. Cal. 2009), the court declined to dismiss a private plaintiff's claim under § 1513(e), but, unlike the courts above, did not address the issue of whether a private right of action exists under the statute.

Second, even if a private right of action existed, § 1107 requires that a whistleblower provide information to a "law enforcement officer." 18 U.S.C. § 1513(e). "Law enforcement officer" is defined as

> an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an advisor or consultant --
>
> (A) authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense; or
>
> (B) serving as a probation or pretrial services officer under this title.

*Id.* § 1515(a)(4). In her complaint, Ms. Hines makes no allegations that she provided information to a law enforcement officer connected with the federal government. Rather, Ms. Hines alleges that she reported her grievances to Ms. Appling and the Deputy Director of the CPUC. They are not "law enforcement officers" under § 1513(e). Thus, § 1107 does not apply. Although, in her opposition, Ms. Hines claims to have "filed a whistleblower complaint notice with relevant federal agencies" prior to filing this lawsuit, Opp'n at 16, Ms. Hines appears to have notified these unidentified federal agencies only a few days before filing this lawsuit. *See* Pl.'s RJN, Ex. E (proof of service). That was well *after* the alleged retaliation in the instant case which took place from July to December 2009. Hence, there is no causation.

E.  Claims Pursuant to Other Federal Statutes (Excluding Title VII)

Finally, Ms. Hines refers in her complaint to two other federal statutes: (1) § 10(b) of the Securities Exchange Act, which is a federal securities law antifraud statute, *see* 15 U.S.C. § 78j(b), and (2) the federal criminal mail fraud statute.[7] *See* 18 U.S.C. § 1341.

With respect to the first statute, Ms. Hines has failed to state a claim for relief because there are no allegations in her complaint that the CPUC engaged in any fraud "in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement." 15 U.S.C. § 78j(b). Nor has she shown that a regulatory agency may be sued for a § 10(b) violation. As for the second statute, the Ninth Circuit has held that there is no private right of action pursuant to § 1341. *See Wilcox v. First Interstate Bank, N.A.*, 815 F.2d 522, 533 n.1 (9th Cir. 1987).

F.  Title VII Claim

As noted above, the only claim against the CPUC that is not barred by Eleventh Amendment immunity is the Title VII claim. Ms. Hines's Title VII claim asserts retaliation.

---

[7] In her complaint, Ms. Hines actually refers to 18 U.S.C. § 1346, but this statute merely defines what a "scheme or artifice to defraud" is. The Court assumes that Ms. Hines meant to refer to the underlying mail fraud statute, 18 U.S.C. § 1341.

"In order to establish a prima facie case of retaliation under Title VII, [a plaintiff] must demonstrate that (1) she engaged in an activity protected under Title VII; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Thomas v. City of Beaverton*, 379 F.3d 802, 811 (9th Cir. 2004). In her complaint, Ms. Hines asserts that the CPUC engaged in retaliation when it subjected her to adverse employment actions (*i.e.*, the Corrective Action Memorandum and two Notices of Adverse Action) after she had filed a Title VII lawsuit against the CPUC back in August 2007.[8]

In its motion to dismiss, the CPUC argues that the Title VII claim must be dismissed because Ms. Hines has failed to allege facts establishing that there was a causal connection between her protected activity and the adverse employment actions. The CPUC notes that the Title VII lawsuit was filed back in August 2007, but the alleged adverse employment actions did not take place until approximately two years later, from July to December 2009.

The Court agrees with the CPUC that this two-year lapse in time, without any other evidence of causation, makes Ms. Hines's retaliation claim facially implausible. Notably, the Supreme Court has stated that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be '*very close*.'" *Clark County School Dist. v. Breeden*, 121 S.Ct. 1508 (2001) (emphasis added). In *Breeden* itself, the Supreme Court concluded that a twenty-month gap between the protected activity and adverse employment action suggested "by itself, no causality at all." *Id.* at 1511. Some courts have found even a gap of even a few months insufficient. For further examples on temporal proximity, see *Richmond v. ONEOK, Inc.*, 120 F. 3d 205 (10th Cir. 1997) (3-month period insufficient), and *Hughes v. Derwinski*, 967 F. 2d 1168 (7th Cir. 1992) (4-month period insufficient).

---

[8] To the extent Ms. Hines argues there was a Title VII violation because the CPUC retaliated against her for refusing to endorse certain DRA reports, that arguments lacks merit. In order to establish a Title VII retaliation claim, a plaintiff must establish, *inter alia*, that "she engaged in an activity *protected under Title VII*." *Thomas*, 379 F.3d at 811. Title VII protects against, *e.g.*, discrimination on the basis of race and retaliation against an employee for making a charge or otherwise participating in a Title VII proceeding. *See id.* Ms. Hines's refusal to endorse the DRA reports had nothing to do with discrimination prohibited by Title VII or a Title VII proceeding.

11

1    In her papers and at the hearing, Ms. Hines noted that her Title VII lawsuit, though initiated back in August 2007, was still pending at the time of the adverse employment actions. However, she has cited no authority showing that this has been a factor considered by the courts. Rather, courts typically focus on the date a complaint is filed (whether, *e.g.*, an informal complaint, a complaint with an administrative agency, or a complaint in a lawsuit), and not on whether proceedings arising from the complaint were still pending. *See, e.g.*, *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (referring to filing of EEOC complaint); *O'Neal v. Ferguson Constr. Co.,* 237 F. 3d 1248, 1253 (10th Cir. 2001) (discussing filing of EEOC claim); *Hughes v. Derwinski,* 967 F. 2d 1168, 1174 (7th Cir. 1992) (referring to formal discrimination complaint with agency). Accordingly, the Court grants the CPUC's motion to dismiss the retaliation claim because the two-year gap in time, without any other evidence, is insufficient to imply a causal connection between the Title VII lawsuit and the alleged adverse employment actions.

The Court, however, shall give Ms. Hines leave to amend the retaliation claim. At this juncture, the Court cannot say that such a claim would necessarily be futile. Ms. Hines may, for example, be able to allege that the CPUC engaged in adverse employment actions closer in time to the August 2007 Title VII lawsuit, or that she engaged in activity protected by Title VII closer in time to the July-December 2009 adverse employment actions. She may also include specific factual allegations which support a causal relationship. Any such allegations, however, must comply with Fed. R. Civ. P. 11.

G.    Punitive Damages

As noted above, the CPUC has filed not only a motion to dismiss but also a motion to strike. More specifically, the CPUC asks the Court to strike the claim for punitive damages against it. For the reasons discussed above, the non-Title VII claims asserted against the CPUC are all barred by Eleventh Amendment immunity. The only potential claim left against the CPUC is the Title VII retaliation claim (assuming that Ms. Hines can state an adequate claim for relief upon amendment). It is well established that punitive damages may not be assessed against a public entity under Title VII. *See* 42 U.S.C. § 1981a(b)(1) (providing that "[a] complaining party may recover punitive damages under this section against a respondent (*other than* a government, government agency or

political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual") (emphasis added).  Accordingly, the CPUC's motion to strike is granted.  If Ms. Hines decides to file an amended complaint with respect to the retaliation claim, she may not include as a request for relief a claim for punitive damages.

### III. CONCLUSION

For the foregoing reasons, the CPUC's motion to dismiss and strike is hereby granted.  All of the claims asserted against the CPUC are dismissed with prejudice except the Title VII retaliation claim.  Ms. Hines has leave of the Court to amend her Title VII retaliation claim.  Any such amended complaint must be filed by December 8, 2010.

This order disposes of Docket No. 9.

IT IS SO ORDERED.

Dated: November 8, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DONNA HINES,

    Plaintiff,

v.

CALIFORNIA PUBLIC UTILITIES COMMISSION, *et al.*,

    Defendants.

_____/

No. C-10-2813 EMC

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

Donna Hines
268 Bush Street, #3204
San Francisco, CA  94104
415-205-3377

Dated: November 8, 2010        RICHARD W. WIEKING, CLERK

By:   /s/  Leni Doyle
      Leni Doyle
      Deputy Clerk