UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA HINES, | No. C-10-2813 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS PEEVEY, LINDH, AND ABHULIMEN'S MOTION TO DISMISS AND STRIKE** |
| CALIFORNIA PUBLIC UTILITIES COMMISSION, *et al.*, | |
| | **(Docket No. 57)** |
| Defendants. | |
| _____/ | |

     Plaintiff Donna Hines has filed suit against, *inter alia*, Defendants the California Public Utilities Commission ("CPUC"), Michael Peevey, Frank Lindh, and Joseph Abhulimen. Currently pending before the Court is a motion to dismiss filed by Mr. Abhulimen, Mr. Lindh, and Mr. Peevey (collectively, the "Individual Defendants"). Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** the Individual Defendants' motion.

### I. FACTUAL & PROCEDURAL BACKGROUND

     In the operative second amended complaint ("SAC"), Ms. Hines alleges as follows. Ms. Hines has been employed by the CPUC since 2002. Currently, she works in the Division of Ratepayer Advocates ("DRA"), which is a department within the CPUC responsible for advocacy on the behalf of California ratepayers, *i.e.*, citizens. Her title is Public Utilities Regulatory Analyst ("PURA"). *See* Compl. ¶¶ 20-22.

     According to Ms. Hines, Mr. Abhulimen also works in the DRA and is her supervisor. *See id.* ¶¶ 41, 233. Mr. Lindh is the general counsel for the CPUC. His duties include supervision of the

United States District Court
For the Northern District of California

1   legal staff who work in the DRA. As the general counsel, Mr. Lindh reports directly to Mr. Peevey,
2   the president of the CPUC. *See id.* ¶¶ 33, 36, 59, 79-81. Mr. Peevey is not only the president of the
3   CPUC but also chairman of the board for directors for California Clean Energy Fund ("CALCEF").
4   *See id.* ¶ 123. CalCEF is a nonprofit entity that makes for-profit investments. *See id.* ¶ 130. Both
5   Mr. Lindh and Mr. Peevey previously worked for utility companies which the CPUC regulates. Mr.
6   Lindh formerly worked for Pacific Gas & Electric, *see id.* ¶¶ 37, 58, and Mr. Peevey for Southern
7   California Edison Company. *See id.* ¶¶ 35, 60.

   Ms. Hines alleges that, from July to December 2009, she was subjected to three adverse
employment actions – more specifically, a Corrective Action Memo and two Notices of Adverse
Action. *See* Compl. ¶¶ 289-91. According to Ms. Hines, these were retaliatory acts for her having
refused to "sponsor" testimony on behalf of the DRA. *See, e.g.*, *id.* ¶¶ 231-32.

   On December 1, 2008, Ms. Hines submitted a Notice of Objection to DRA management in
which she complained that she had been incorrectly named as a co-author of a certain document.
*See* Docket No. 36, at 104 (attachment to SAC). That document appears to have been the "DRA
Protest to SDG&E's [San Diego Gas & Electric's] ERRA Application," filed on November 17,
2008. *See* Docket No. 36, at 125 (attachment to SAC). In her Notice of Objection, Ms. Hines
stated: "I did not write, nor did I provide any input to this document. . . . [¶] What follows herein
constitutes a notice of objection to the unauthorized use of my name on any and all memos, reports,
and other public documents issued by the CPUC or any of its subdivisions." Docket No. 36, at 104
(attachment to SAC).

   Subsequently, Ms. Hines continued to refuse to sponsor documents issued by the DRA. For
example, based on the Notice of Adverse Action dated December 3, 2009, *see* Docket No. 36, at
176, *et seq.* (attachment to SAC), it appears that:

•   On September 17, 2009, Ms. Hines told her supervisor, Mr. Abhulimen, that "[she] would
    not include [her] Statement of Qualification (SOQ) on any of DRA testimonies." Docket No.
    36, at 177 (attachment to SAC). Another DRA manager told her that, "consistent with [her]
    duty statement, [she was] required to include [her] qualifications on all reports and
    testimonies, and [she was] required to testify as an expert witness on behalf of DRA."

United States District Court
For the Northern District of California

Docket No. 36, at 177 (attachment to SAC). Generally objecting to sponsoring testimony (as opposed to making a case-specific objection) was considered insubordination and a refusal to do work as defined by her duty statement. The Notice of Adverse Action stated: "Your refusal to include your SOQ and sponsor DRA testimony has become disruptive to DRA management's ability to effectively and efficiently complete its testimonies. Your behavior has caused DRA to redirect its limited resources and to assign someone else to sponsor your reports and testimonies." Docket No. 36, at 177 (attachment to SAC).

- On October 14, 2009, Ms. Hines refused to provide her SOQ for the SDG&E ERRA compliance proceeding. The Notice of Adverse Action stated: "Your refusal is insubordinate and willfully disobedient since you previously acknowledged that this requirement is part of your duty as a PURA III." Docket No. 36, at 177 (attachment to SAC).

- On October 29, 2009, Ms. Hines refused to testify in CPUC evidentiary hearings to the report and testimony she prepared on Southern California Edison's 2008 ERRA compliance application. The Notice of Adverse Action stated: "[Y]our failure to testify has placed the success of this project in jeopardy because of your refusal to fulfill your role and responsibilities as a PURA III." Docket No. 36, at 178 (attachment to SAC).

Based on, *inter alia*, the above allegations, Ms. Hines asserted the following causes of action against the Individual Defendants: (1) claims for violation of §§ 15(a)(1) and 18(a) of the Securities Exchange Act and (b) claims for violation of 42 U.S.C. §§ 1983 and 1985 (based on the First Amendment).

## II.   DISCUSSION

A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted

1 inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063,
1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must
plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial
plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937,
1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility
standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a
defendant acted unlawfully." *Id.*

B.   <u>Violation of §§ 15(a)(1) and 18(a) of the Securities Exchange Act</u>

Section 15(a)(1) of the Securities Exchange Act provides as follows: "It shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section." 15 U.S.C. § 78o(a)(1). Thus, § 15(a)(1) "makes it illegal for a 'broker' to effect any transaction in, or to induce or attempt to induce the purchase or sale of any security unless such broker is registered with the [Securities Exchange] Commission or, in the case of a natural person, is associated with a registered broker-dealer." *United States SEC v. Montana*, 464 F. Supp. 2d 772, 785 (S.D. Ind. 2006). In the instant case, Ms. Hines makes no allegation that any of the Individual Defendants is a broker or dealer.[1] Nor does Ms. Hines allege that any of the Individual Defendants failed to register with the SEC. Finally, there is no allegation that any of the Individual Defendants

---

[1] In her papers, Ms. Hines claims that Mr. Peevey at least is a person with "investment discretion," as defined in the Securities Exchange Act. *See* Compl. ¶ 32; *see also* 15 U.S.C. § 78c(a)(35) (defining person who exercises investment discretion). But § 15(a)(1) concerns brokers or dealers specifically, not persons with investment discretion.

4

1  was involved with the purchase or sale of securities.[2] Therefore, § 15(a)(1) is patently inapplicable,
2  and Ms. Hines's § 15(a) claim against each Individual Defendant is dismissed with prejudice.

3  As for § 18(a), it provides for liability, under certain circumstances, with respect to "[a]ny
4  person who shall make or cause to be made any statement in any application, report, or document
5  filed pursuant to this title [15 U.S.C. § 78a *et seq.*] or any rule or regulation thereunder, or any
6  undertaking contained in a registration statement as provided in subsection (d) of section 15 of this
7  title [15 U.S.C. § 78o(d)], which statement was at the time and in the light of the circumstances
8  under which it was made false or misleading with respect to any material fact." 15 U.S.C. § 78r(a).
9  In essence, § 18(a) "creates a private cause of action against persons, such as accountants, who
10 'make or cause to be made' materially misleading statements in any reports or other documents filed
11 with the [Securities Exchange] Commission." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572
12 (1979). A claim pursuant to § 18(a), however, may be brought only by "persons who, in reliance on
13 the [misleading] statements, purchased or sold a security whose price was affected by the
14 statements." *Id.* at 572; *see also* 15 U.S.C. § 78r(a) (providing for liability "to any person (not
15 knowing that such statement was false or misleading) who, *in reliance* upon such statement, shall
16 have purchased or sold a security at a price which was affected by such statement, for damages
17 caused by such reliance") (emphasis added). Thus, "[t]o succeed under a Section 18(a) claim, a
18 plaintiff is required to plead and prove (1) the defendant made or caused to be made a statement of
19 material fact that was false or misleading at the time and in light of the circumstances under which it

---

[2] To the extent Ms. Hines suggests that the Individual Defendants were involved with the purchase or sale of securities based on California Public Utilities Code § 816, the Court does not agree. Section 816 provides that

> [t]he power of public utilities to issue stocks and stock certificates or other evidence of interest or ownership and bonds, notes, and other evidences of indebtedness and to create liens on their property situated within this State is a special privilege, the right of supervision, regulation, restriction, and control of which is vested in the State, and such power shall be exercised as provided by law under such rules as the commission prescribes.

Cal. Pub. Util. Code § 816. That the CPUC has the power to regulate the issuance of securities does not imply that either it or the Individual Defendants who work for the agency have anything to do with the subsequent purchase or sale of securities.

was made, (2) the statement was contained in a document filed pursuant to the Exchange Act or any rule or regulation thereunder, (3) reliance on the false statement, and (4) resulting loss to the plaintiff." *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1171 (10th Cir. 2006).

Ms. Hines's § 18(a) claim suffers from several flaws. First, it is not even clear what misleading statements were made by the Individual Defendants (in particular, Mr. Abhulimen). Second, to the extent Ms. Hines asserts that the Individual Defendants made misleading statements by failing to disclose certain conflicts of interest,[3] Ms. Hines does not allege that the statements were made in a document filed pursuant to the Securities Exchange Act. Finally, Ms. Hines does not allege that she relied on any omission about conflicts of interest in purchasing or selling a security. Accordingly, the § 18(a) claim as to each Individual Defendant is without merit and is dismissed.

C. Violation of 42 U.S.C. §§ 1983 and 1985 (First Amendment)

As indicated above, it appears that, during the relevant period, Mr. Peevey was the president of the CPUC, Mr. Lindh the general counsel to the CPUC, and Mr. Abhulimen Ms. Hines's supervisor. According to Ms. Hines, each of the individual defendants violated 42 U.S.C. §§ 1983 and 1985 by retaliating against her for engaging in First Amendment-protected speech.

1. Mr. Peevey and Mr. Lindh

The §§ 1983 and 1985 claims asserted against Mr. Peevey and Mr. Lindh are without merit. Ms. Hines has made no allegation that either Mr. Peevey or Mr. Lindh was a decisionmaker with respect to any of the three adverse employment actions she suffered (*i.e.*, the Corrective Action Memorandum of July 27, 2009; the Notice of Adverse Action of September 8, 2009; or the Notice of Adverse Action of December 3, 2009). The fact that Mr. Peevey and Mr. Lindh are high-level managers within the CPUC and that their subordinates (*e.g.*, Ms. Appling or Mr. Abhulimen) may have engaged in retaliatory conduct is not sufficient. There is no respondeat superior liability under § 1983 or § 1985. Rather, "a supervisor is liable for the acts of his subordinates [only] 'if the

---

[3] For example, Ms. Hines has suggested that there were conflicts of interest because Mr. Peevey and Mr. Lindh had authority over the legal staff assigned to the DRA even though the DRA was supposed to be an independent body; because Mr. Peevey and Mr. Lindh formerly worked for the utilities that the CPUC regulates; and because Mr. Peevey is the chairman of CalCEF's board of directors and CalCEF invests in companies that participate in CPUC proceedings.

6

supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them.'" *Preschooler II v. Clark County Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007). Thus, there is no basis to assert the §§ 1983 and 1985 claims against Mr. Peevey and Mr. Lindh.

2.  All Individual Defendants

Unlike Mr. Peevey and Mr. Lindh, Mr. Abhulimen does appear to have had a hand in the adverse employment actions suffered by Ms. Hines. Indeed, the Corrective Action Memorandum of July 27, 2009, was issued by him and another DRA manager (Cynthia Walker).

Nonetheless, the First Amendment retaliation claim asserted against Mr. Abhulimen, as well as the other two Individual Defendants, is meritless under *Garcetti v. Ceballos*, 547 U.S. 410 (2006). Under *Garcetti*, a public employee's speech is protected where the speech was spoken in the capacity of a private citizen, but not a public employee. "Statements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (internal quotation marks omitted). On the other hand, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

Based on the allegations in the SAC, Ms. Hines's only claim is that the adverse employment actions were taken in retaliation for her having failed to sponsor under oath testimony on behalf of the DRA. *See, e.g.*, Compl. ¶¶ 294, 298. The problem for Ms. Hines is that her sponsoring of testimony was a task she was paid to perform. Notably, the Notice of Adverse Action of December 3, 2009, indicated that, Ms. Hines's work, as defined by her duty statement, required her "to include [her] qualifications on all reports and testimonies, and . . . to testify as an expert witness on behalf of DRA." Docket No. 36, at 177 (attachment to SAC). The duty statement that has been provided by the Individual Defendants confirms that sponsoring testimony was a part of her job as a PURA.[4] *See*

---

[4] The Court takes judicial notice of the duty statement because it was a part of the Notice of Adverse Action – more specifically, it was Exhibit A of the Notice. Ms. Hines attached a copy of the Notice to her complaint but failed to provide the exhibits that were a part of the Notice. *See In*

1  Grant Decl., Ex. A (Duty Statement attached to Notice of Adverse Action, dated December 3, 2009)
2  (stating that a PURA III's duties include the following: "Participate in public hearings before the
3  Commission, workshops and other forums[;] [p]rovide expert advice and present testimony in
4  support of results of completed studies and position papers/comments").  Thus, under *Garcetti*, her
5  speech (or rather, her refusal to speak) was made in the capacity of a public employee and not a
6  citizen, and her First Amendment claim must fail.

7  Ms. Hines argues that it was not part of her duties to lie.  *See* Opp'n at 10 (claiming that
8  using her name to support altered testimony "is outside the scope of civil service employment, and
9  constitutes subornation of perjury"); *see also Marable v. Nitchman*, 511 F.3d 924, 932 (9th Cir.
10 2007) (noting that plaintiff's "complaints concerning his superiors' allegedly corrupt overpayment
11 schemes were not in any way a part of his official job duties").  But this argument misses the point.
12 "Restricting speech that *owes its existence* to a public employee's professional responsibilities does
13 not infringe any liberties the employee might have enjoyed as a private citizen.  It simply reflects the
14 exercise of employer control over what the employer itself has commissioned or created." *Garcetti*,
15 547 U.S. at 421-22 (emphasis added).  Here, Ms. Hines's speech or refusal to speak owed its
16 existence to her job as a PURA.  That Ms. Hines disagreed with the content of the work-related
17 speech even to the point where she felt the testimony would have been untruthful or unlawful does
18 not change the fundamental nature of the speech at issue – the speech still owed its existence to her
19 duties as employee, not in her capacity as a private citizen.  *Cf. Garcetti*, 547 U.S. at 420 (ultimately
20 concluding that plaintiff's speech was made pursuant to his official duties even though the speech

---

*re Stacs Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (stating that "[d]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered") (internal quotation marks omitted); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that, on a motion to dismiss, a court may consider a document not explicitly incorporated in complaint and not attached to complaint, but authenticity of which is not questioned and on which complaint necessarily relies); *see also Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002) (stating that district court was entitled to consider letters that were not attached to complaint when complaint contained extensive excerpts from letters and references to them; when factual allegations of complaint revolved around document whose authenticity is unchallenged, that document effectively merges into pleadings); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (indicating that, if a plaintiff's claims are predicated on a document, the defendant may attach the document to a Rule 12(b)(6) motion even if the plaintiff's complaint does not explicitly refer to it).

consisted of a memo in which plaintiff, a deputy district attorney, opined that serious misrepresentations had been made in an affidavit used to obtain a search warrant).

Finally, even if Ms. Hines were correct that her speech was not barred by *Garcetti*, her First Amendment claims are still fatally deficient because she has failed to establish that her refusal to sponsor testimony was a matter of public concern. *See Eng*, 552 F.3d at 1071 (identifying a five-step inquiry with respect to a First Amendment retaliation claim, the first of which whether the plaintiff spoke on a matter of public concern). To the extent Ms. Hines argues that conflicts of interest by Mr. Peevey and Mr. Lindh were a matter of public concern, *see, e.g.*, Compl. ¶ 288, there is nothing in the SAC that indicates that Ms. Hines told Mr. Abhulimen or any other DRA/CPUC manager that she refused to sponsor testimony *because of* potential conflicts of interest. Notably, nothing about a conflict of interest is mentioned in her Notice of Objection of December 1, 2008.

The Court thus dismisses with prejudice the First Amendment claims under both §§ 1983 and 1985 asserted against the Individual Defendants.[5]

### III. CONCLUSION

For the foregoing reasons, the Court grants the individual defendants' motion to dismiss. Generally, if a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). If amendment would be futile, however, a dismissal may be ordered with prejudice. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010). Here, the Court concludes that amendment could be futile. The Securities Exchange Act is clearly inapplicable in this case, which is at heart an employment dispute. As for Ms. Hines's First

///
///
///
///
///

---

[5] The § 1985 claim is dismissed alongside the § 1983 claim because a claim under § 1985 is simply a claim of conspiracy to interfere with one's civil rights and is based on the same underlying conduct. *See* 42 U.S.C. § 1985.

Amendment claims, she has had the opportunity to frame her complaint three times, and in none of the complaints has she included allegations that indicate her refusal to speak was made in her capacity as a citizen or that she ever informed her managers that she was refusing to speak because of claimed conflicts of interest.

This order disposes of Docket No. 57.

IT IS SO ORDERED.

Dated: May 25, 2011

_____
EDWARD M. CHEN
United States District Judge

10

**United States District Court**
For the Northern District of California

|  |  |
|---|---|
| UNITED STATES DISTRICT COURT | |
| NORTHERN DISTRICT OF CALIFORNIA | |
| DONNA HINES, | No. C-10-2813 EMC |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| CALIFORNIA PUBLIC UTILITIES COMMISSION, *et al.*, | |
| Defendants. | |
| _____/ | |

I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

Donna Hines
268 Bush Street, #3204
San Francisco, CA 94104
415-205-3377

Dated: May 25, 2011          RICHARD W. WIEKING, CLERK

                              By:    /s/   Leni Doyle
                                    Leni Doyle
                                    Deputy Clerk