United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA HINES, | No. C-10-2813 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| CALIFORNIA PUBLIC UTILITIES COMMISSION, *et al.*, | **(Docket No. 103)** |
| Defendants. | |
| _____/ | |

    Plaintiff Donna Hines filed suit against the California Public Utilities Commission ("CPUC"), Michael R. Peevey, Frank R. Lindh, Joseph A. Abhulimen, and the Estate of Dana S. Appling ("Appling"), for retaliation under Title VII of the Civil Rights Act of 1964, violations of §§ 15(a)(1) and 18(a) of the Securities Exchange Act ("SEA"), and violations of 42 U.S.C. §§ 1983 and 1985 based on the First Amendment. All Defendants besides Appling have been dismissed. Pending before the Court is Appling's motion to dismiss Plaintiff's only causes of action against it under §§ 15(a)(1) and 18(a) of the SEA and §§ 1983 and 1985. Docket No. 103.

## I.    **FACTUAL & PROCEDURAL BACKGROUND**

    In the operative second amended complaint ("SAC"), Docket No. 36, Ms. Hines alleges as follows. The CPUC is a state agency. *See* SAC ¶ 46. CPUC regulates the three largest utilities operating in California, including Pacific Gas and Electric Company ("PG&E"). *See id.* ¶ 48. Ms. Hines has worked for the CPUC since 2002. *See id.* ¶ 20. Currently, she works in the Division of Ratepayer Advocates ("DRA"), which is a department within the CPUC responsible for advocacy on

the behalf of California ratepayers, *i.e.*, citizens. Her title is Public Utilities Regulatory Analyst ("PURA"). *See id.* ¶¶ 20-22. Ms. Appling, the only remaining Defendant, was the Director of the DRA from August 2004 to August 2010. *See id.* ¶¶ 38, 187.

Ms. Hines alleges that, from July to December 2009, she was subjected to three adverse employment actions – more specifically, a Corrective Action Memo and two Notices of Adverse Action. *See* SAC ¶¶ 289-91. According to Ms. Hines, these were retaliatory acts for her refusal to "sponsor" testimony on behalf of the DRA. *See, e.g.*, *id.* ¶¶ 231-32.

On December 1, 2008, Ms. Hines submitted a Notice of Objection to Ms. Appling in which she complained that she had been incorrectly named as a co-author of a certain document. *See* SAC ¶ 224; Docket No. 36, at 104 (attachment to SAC).[1] That document appears to have been the "DRA Protest to SDG&E's [San Diego Gas & Electric's] ERRA Application," filed on November 17, 2008. *See* Docket No. 36, at 125 (attachment to SAC). In her Notice of Objection, Ms. Hines stated: "I did not write, nor did I provide any input to this document. . . . [¶] What follows herein constitutes a notice of objection to the unauthorized use of my name on any and all memos, reports, and other public documents issued by the CPUC or any of its subdivisions." Docket No. 36, at 104 (attachment to SAC). Plaintiff also asked Ms. Appling to "cite to legal authority for unauthorized use of her name on DRA testimony (and associated obligation to sponsor testimony, under oath)." SAC ¶ 226; *see* Docket No. 36, at 103 (attachment to SAC). Ms. Appling responded on December 8, 2008, that "I have informed staff that this policy would be implemented in past DRA meetings. It is a policy call on my part and does not require legal authority." SAC ¶ 227; *see* Docket No. 36, at 102 (attachment to SAC).

Subsequently, Ms. Hines continued to refuse to sponsor documents issued by the DRA. For example, based on the Notice of Adverse Action dated December 3, 2009 and issued by Ms. Appling, *see* SAC ¶ 231; Docket No. 36, at 176, *et seq.* (attachment to SAC), it appears that:

---

[1] Plaintiff's requests for judicial notice are **DENIED**. Many of the documents in her requests are already attached to or referenced in the complaint, and thus already properly before the Court. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The remainder of the documents – including newspaper articles – are not judicially noticeable. *See* Fed. R. Evid. 201(b).

1  • On September 17, 2009, Ms. Hines told her supervisor, Mr. Abhulimen, that "[she] would
2     not include [her] Statement of Qualification (SOQ) on any of DRA testimonies." Docket No.
3     36, at 177 (attachment to SAC). Another DRA manager told her that, "consistent with [her]
4     duty statement, [she was] required to include [her] qualifications on all reports and
5     testimonies, and [she was] required to testify as an expert witness on behalf of DRA."
6     Docket No. 36, at 177 (attachment to SAC). Generally objecting to sponsoring testimony (as
7     opposed to making a case-specific objection) was considered insubordination and a refusal to
8     do work as defined by her duty statement. The Notice of Adverse Action stated: "Your
9     refusal to include your SOQ and sponsor DRA testimony has become disruptive to DRA
10    management's ability to effectively and efficiently complete its testimonies. Your behavior
11    has caused DRA to redirect its limited resources and to assign someone else to sponsor your
12    reports and testimonies." Docket No. 36, at 177 (attachment to SAC).
13 • On October 14, 2009, Ms. Hines refused to provide her SOQ for the SDG&E ERRA
14    compliance proceeding. The Notice of Adverse Action stated: "Your refusal is insubordinate
15    and willfully disobedient since you previously acknowledged that this requirement is part of
16    your duty as a PURA III." Docket No. 36, at 177 (attachment to SAC).
17 • On October 29, 2009, Ms. Hines refused to testify in CPUC evidentiary hearings to the
18    report and testimony she prepared on Southern California Edison's 2008 ERRA compliance
19    application. The Notice of Adverse Action stated: "[Y]our failure to testify has placed the
20    success of this project in jeopardy because of your refusal to fulfill your role and
21    responsibilities as a PURA III." Docket No. 36, at 178 (attachment to SAC).

22  Based on, *inter alia*, the above allegations, Ms. Hines asserted the following causes of action
23 against the individual Defendants, including Ms. Appling: (1) claims for violation of §§ 15(a)(1) and
24 18(a) of the Securities Exchange Act and (b) claims for violation of 42 U.S.C. §§ 1983 and 1985
25 (based on the First Amendment).

26  All individual defendants except Defendant Appling moved to dismiss Plaintiff's SAC,
27 which the Court granted with prejudice on May 25, 2011. Docket No. 76. Accordingly, Defendant
28

3

Appling is the only remaining defendant in the action. Pending before the Court is Appling's motion to dismiss. Docket No. 103.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

B. Securities Exchange Act § 15(a)(1)

Section 15(a)(1) of the Securities Exchange Act provides as follows: "It shall be unlawful for any broker or dealer . . . to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section." 15 U.S.C. § 78o(a)(1). Thus, § 15(a)(1) "makes it illegal for a 'broker' to effect any transaction in, or to induce or attempt to induce the purchase or sale of any security unless such broker is registered with the [Securities Exchange] Commission or, in the case of a natural person, is associated with a registered broker-dealer." *United States SEC v. Montana*, 464 F. Supp. 2d 772, 785 (S.D. Ind. 2006). This Court has already determined that Plaintiff made no allegations in her

4

SAC that any of the other individual defendants was a broker or dealer. *See* Order Granting Individual Defendants' Motion to Dismiss ("Order"), Docket No. 76, at 4. The same flaw applies to Ms. Hines's allegations against Defendant Appling. While her SAC refers to Ms. Appling as an "other person" as defined in the Securities Exchange Act, *see* SAC ¶ 30,[2] § 15(a)(1) concerns brokers or dealers specifically, and Plaintiff alleges no facts from which one could conclude Ms. Appling was either. Nor is there any allegation that she was involved with the purchase or sale of securities.[3] Accordingly, as the Court concluded with respect to the other individual defendants, § 15(a)(1) is patently inapplicable, and Ms. Hines's § 15(a) claim against Defendant Appling is dismissed with prejudice.

C.  SEA § 18(a)

Section 18(a) provides for liability, under certain circumstances, with respect to "[a]ny person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title [15 U.S.C. § 78a *et seq.*] or any rule or regulation thereunder, or any

---

[2] While it is not entirely clear to what Ms. Hines refers when she describes "other person," in the context of § 15(a)(1), "other person" is used to describe a person's vicarious or aiding and abetting liability for the violations of an "other person." For example, subsection (a)(4)(E) explains that the Commission may act against a broker or dealer who "has willfully aided, abetted, counseled, commanded, induced, or procured the violation by any other person of any provision of the Securities Act of 1933." Thus, the "other person" would by definition also have to be covered within the terms of the Act in order to violate it. In this case, that means Ms. Appling would have to be a broker or dealer.

[3] To the extent Ms. Hines suggests that Appling was involved with the purchase or sale of securities based on California Public Utilities Code § 816, the Court does not agree. Section 816 provides that

> [t]he power of public utilities to issue stocks and stock certificates or other evidence of interest or ownership and bonds, notes, and other evidences of indebtedness and to create liens on their property situated within this State is a special privilege, the right of supervision, regulation, restriction, and control of which is vested in the State, and such power shall be exercised as provided by law under such rules as the commission prescribes.

Cal. Pub. Util. Code § 816. That the CPUC has the power to regulate the issuance of securities does not imply that either it or Appling, who works for the agency, has anything to do with the subsequent purchase or sale of securities. Indeed, the Court has already rejected such a theory in connection with dismissed Defendant Peevey, about whom Ms. Hines included more specific (though still plainly insufficient) securities-related allegations. *See* Order at 4-5 & n.1, n.2 (describing Plaintiff's allegation that Peevey was a person with "investment discretion" as defined by the SEC, and finding that such an allegation did not indicate that he was a broker or dealer, or that he was involved in the purchase or sale of securities).

undertaking contained in a registration statement as provided in subsection (d) of section 15 of this title [15 U.S.C. § 78o(d)], which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact." 15 U.S.C. § 78r(a). In essence, § 18(a) "creates a private cause of action against persons, such as accountants, who 'make or cause to be made' materially misleading statements in any reports or other documents filed with the [Securities Exchange] Commission." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979). A claim pursuant to § 18(a), however, may be brought only by "persons who, in reliance on the [misleading] statements, purchased or sold a security whose price was affected by the statements." *Id.* at 572; *see also* 15 U.S.C. § 78r(a) (providing for liability "to any person (not knowing that such statement was false or misleading) who, *in reliance* upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance") (emphasis added). Thus, "[t]o succeed under a Section 18(a) claim, a plaintiff is required to plead and prove (1) the defendant made or caused to be made a statement of material fact that was false or misleading at the time and in light of the circumstances under which it was made, (2) the statement was contained in a document filed pursuant to the Exchange Act or any rule or regulation thereunder, (3) reliance on the false statement, and (4) resulting loss to the plaintiff." *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1171 (10th Cir. 2006).

Ms. Hines's § 18(a) claim against Defendant Appling suffers from the same flaws as her claim against the other individual defendants. *See* Order at 6. First, it is not clear what misleading statements were made by Defendant Appling. Second, to the extent Ms. Hines asserts that Defendant Appling made misleading statements by failing to disclose certain conflicts of interest, *see* SAC ¶ 221 (referring to general "represent[ations] to the public" that "DRA is an independent entity"),[4] Ms. Hines does not allege that the statements were made in a document filed pursuant to

---

[4] For example, Ms. Hines has suggested that there were conflicts of interest because Mr. Peevey (President of the CPUC) and Mr. Lindh (General Counsel of CPUC) had authority over the legal staff assigned to the DRA even though the DRA was supposed to be an independent body. In the section of her complaint devoted to Ms. Appling, she refers to Ms. Appling's participation in and furtherance of this conflict of interest. *See* SAC ¶¶ 192-228. She also states that DRA has issued documents to the public in which it has "failed to make material disclosures that its policy decisions

1 the Securities Exchange Act. Finally, Ms. Hines does not allege that she relied on any omission
2 about conflicts of interest in purchasing or selling a security. Accordingly, the § 18(a) claim as to
3 Defendant Appling is without merit and is dismissed.

D. <u>42 U.S.C. §§ 1983 & 1985</u>

As indicated above, Ms. Appling was the Director of the Division of Ratepayer Advocates ("DRA") from August 2004 to August 2010. SAC ¶ 187. Plaintiff worked in the DRA as a Public Utilities Regulatory Analyst ("PURA") Level III, SAC ¶ 21, and her supervisor was Joseph Abhulimen, SAC ¶ 233. According to Ms. Hines, Ms. Appling violated 42 U.S.C. §§ 1983 and 1985 by retaliating against her for engaging in First Amendment-protected speech. *See* SAC ¶ 232.

Ms. Hines suffered three adverse employment actions at issue in this case: the Corrective Action Memorandum of July 27, 2009; the Notice of Adverse Action of September 8, 2009; and the Notice of Adverse Action ("NoAA") of December 3, 2009. Like Mr. Abhulimen (Ms. Hines's supervisor), Ms. Appling appears to have had a hand in the adverse employment actions suffered by Ms. Hines. *See* Order at 7. Indeed, the NoAA of December 3, 2009 was issued by her. SAC ¶ 231. Plaintiff alleges that the NoAA "was motivated by Plaintiff's failure to 'sponsor' under oath, testimony on behalf of DRA." SAC ¶ 232.

Nonetheless, the First Amendment retaliation claim asserted against Defendant Appling, as it was against Mr. Abhulimen, is meritless under *Garcetti v. Ceballos*, 547 U.S. 410 (2006). *See* Order at 7. Under *Garcetti*, a public employee's speech is protected where the speech was spoken in the capacity of a private citizen, but not where it was spoken in the capacity of a public employee. "Statements are made in the speaker's capacity as citizen if the speaker had no official duty to make the questioned statements, or if the speech was not the product of performing the tasks the employee was paid to perform." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (internal quotation marks omitted). On the other hand, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the

---

are made by staff reporting directly to CPUC." SAC ¶ 222.

Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421.

Based on the allegations in the SAC, Ms. Hines's only claim is that the adverse employment actions were taken in retaliation for her having failed to sponsor under oath testimony on behalf of the DRA. *See, e.g.*, SAC ¶¶ 226, 232, 294, 298. The problem for Ms. Hines is that her sponsoring of testimony was a task she was paid to perform. Notably, the Notice of Adverse Action of December 3, 2009, indicated that, Ms. Hines's work, as defined by her duty statement, required her "to include [her] qualifications on all reports and testimonies, and . . . to testify as an expert witness on behalf of DRA." Docket No. 36, at 177 (attachment to SAC). The duty statement that has been provided by the Individual Defendants confirms that sponsoring testimony was a part of her job as a PURA.[5] *See* Torres Decl., Ex. A (Duty Statement attached to Notice of Adverse Action, dated December 3, 2009) (stating that a PURA III's duties include the following: "Participate in public hearings before the Commission, workshops and other forums[;] [p]rovide expert advice and present testimony in support of results of completed studies and position papers/comments"). Thus, under *Garcetti*, her speech (or rather, her refusal to speak) was made in the capacity of a public employee and not a citizen, and her First Amendment claim must fail.

Ms. Hines argues that it was not part of her duties to lie. *See* Opp'n at 17 (claiming that using her name to support altered testimony "is outside the scope of civil service employment, and constitutes subornation of perjury"); *see also Marable v. Nitchman*, 511 F.3d 924, 932 (9th Cir.

---

[5] The Court takes judicial notice of the duty statement because it was a part of the Notice of Adverse Action – more specifically, it was Exhibit A of the Notice. Ms. Hines attached a copy of the Notice to her complaint but failed to provide the exhibits that were a part of the Notice. *See In re Stacs Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996) (stating that "[d]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered") (internal quotation marks omitted); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that, on a motion to dismiss, a court may consider a document not explicitly incorporated in complaint and not attached to complaint, but authenticity of which is not questioned and on which complaint necessarily relies); *see also Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002) (stating that district court was entitled to consider letters that were not attached to complaint when complaint contained extensive excerpts from letters and references to them; when factual allegations of complaint revolved around document whose authenticity is unchallenged, that document effectively merges into pleadings); *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (indicating that, if a plaintiff's claims are predicated on a document, the defendant may attach the document to a Rule 12(b)(6) motion even if the plaintiff's complaint does not explicitly refer to it).

2007) (noting that plaintiff's "complaints concerning his superiors' allegedly corrupt overpayment schemes were not in any way a part of his official job duties"). But this argument misses the point. "Restricting speech that *owes its existence* to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 547 U.S. at 421-22 (emphasis added). Here, Ms. Hines's speech or refusal to speak owed its existence to her job as a PURA. That Ms. Hines disagreed with the content of the work-related speech even to the point where she felt the testimony would have been untruthful or unlawful does not change the fundamental nature of the speech at issue – the speech still owed its existence to her duties as employee, not in her capacity as a private citizen. *Cf. Garcetti*, 547 U.S. at 420 (ultimately concluding that plaintiff's speech was made pursuant to his official duties even though the speech consisted of a memo in which plaintiff, a deputy district attorney, opined that serious misrepresentations had been made in an affidavit used to obtain a search warrant).

Finally, even if Ms. Hines were correct that her speech was not barred by *Garcetti*, her First Amendment claims are still fatally deficient because she has failed to establish that her refusal to sponsor testimony was a matter of public concern. *See Eng*, 552 F.3d at 1071 (identifying a five-step inquiry with respect to a First Amendment retaliation claim, the first of which is whether the plaintiff spoke on a matter of public concern). To the extent Ms. Hines argues that conflicts of interest furthered by Ms. Appling were a matter of public concern, *see, e.g.*, SAC ¶ 187-232, 288, there is nothing in the SAC that indicates that Ms. Hines told Ms. Appling or any other DRA/CPUC manager that she refused to sponsor testimony *because of* potential conflicts of interest. Notably, nothing about a conflict of interest is mentioned in her Notice of Objection to Ms. Appling of December 1, 2008.

The Court thus dismisses with prejudice the First Amendment claims under both §§ 1983 and 1985 asserted against Defendant Appling.[6]

---

[6] The § 1985 claim is dismissed alongside the § 1983 claim because a claim under § 1985 is simply a claim of conspiracy to interfere with one's civil rights and is based on the same underlying conduct. *See* 42 U.S.C. § 1985.

9

### III. CONCLUSION

For the foregoing reasons, the Court grants the Estate of Dana Appling's motion to dismiss. Generally, if a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). If amendment would be futile, however, a dismissal may be ordered with prejudice. *See Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010). Here, the Court concludes that amendment would be futile for the same reasons as the Court discussed in its Order dismissing the other individual defendants. The Securities Exchange Act is clearly inapplicable in this case, which is at heart an employment dispute. As for Ms. Hines's First Amendment claims, she has had the opportunity to frame her complaint three times, and in none of the complaints has she included allegations that indicate her refusal to speak was made in her capacity as a citizen or that she ever informed her managers that she was refusing to speak because of claimed conflicts of interest.

The dismissal is therefore with prejudice. The Clerk is instructed to enter judgment and close the file.

This order disposes of Docket No. 103.

IT IS SO ORDERED.

Dated: November 21, 2011

_____
EDWARD M. CHEN
United States District Judge

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA HINES, | No. C-10-2813 EMC |
| Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| CALIFORNIA PUBLIC UTILITIES COMMISSION, *et al.*, | |
| Defendants. | |

_____/

I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

Donna Hines
268 Bush Street, #3204
San Francisco, CA 94104
415-205-3377

Dated: November 21, 2011           RICHARD W. WIEKING, CLERK

By:  /s/ Leni Doyle
     Leni Doyle
     Deputy Clerk